UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMIE ARANA DEL TORO,<br><br>    Petitioner,<br><br>v.<br><br>WARDEN D. ORTIZ,<br><br>    Respondent. | Civil Action<br>No. 20-1977 (CPO)<br><br>**OPINION** |

**O'HEARN, District Judge.**

Petitioner is a federal prisoner, and he is proceeding *pro se* with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (ECF Nos. 1, 5-1.) Respondent filed an Answer opposing relief (ECF No. 9), and Petitioner filed a Reply, (ECF No. 10). For the reasons set forth below, the Court will deny the Petition.

    **I.**    **BACKGROUND**

This case arises from a disciplinary hearing during Petitioner's incarceration at FCI Fort Dix, in Fort Dix, New Jersey. On January 25, 2019, staff issued an incident report charging Petitioner with possessing a hazardous tool, in violation of Bureau of Prisons ("BOP") Disciplinary Code 108 and lying to a staff member in violation of Code 313.[1] (ECF No. 9-1, at 16.) The report describes the incident as follows:

> On 1/25/2019 at approximately 10:15AM, Counselors Jones, Castellanos, and I[,] Officer L. McNair conducted an area search of room 240 in unit 5741. Upon entry of the room counselors Jones

---

[1] Code 108 prohibits: "Possession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; *e.g.*, hack-saw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device)." 28 C.F.R. § 541.3 (Table 1).

Code 313 prohibits: "Lying or providing a false statement to a staff member." (*Id*.)

> and Castellanos ordered the inmates inside 240 to secure their lockers, submit to pat searches, and exit room 240. One inmate was seen sleeping in bunk 4L. This inmate was identified as DEL TORO, Jamie (18805-111). Inmate DEL TORO was woken up. Counselor Jones informed me that DEL TORO stated that he did not have a lock for his locker. I searched DEL TORO's locker and found a combination master lock inside DEL TORO's locker.
>
> After while continuing my search, behind DEL TORO's locker and in the immediate area related to bunk 4L of room 240, I noticed two cases of Pepsi soda. A search of the wall behind the cases of Pepsi soda [led] to the discovery of a homemade wall safe. The safe was a hole in the wall approximately 4 inches by 4 inches. The hole was covered with a piece of [cinder] block that fit over the hole like a puzzle piece. Inside the safe[,] I found 1 black Samsung cell phone, 1 white Samsung galaxy cell phone, 2 Samsung cell phone batteries, a cell phone charging cable, and a black blu[e] tooth rechargeable head phone. All items were recovered and logged as contraband. DEL TORO's locker was the only locker between the bunk and the wall. The locker was in a corner where the window wall met the adjacent wall. The wall safe was accessible from the bed. An inquiry was made into DEL TORO's commissary purchases[,] and the records show that DEL TORO had purchased two cases of Pepsi soda on 01/24/2019.

(*Id*. at ¶ 11.)

Later that same day, staff delivered a copy of the incident report to Petitioner and advised him of his rights. (*Id*. at ¶¶ 14–16.) Petitioner stated that he understood his rights and denied that the contraband belonged to him. (*Id*. at ¶¶ 23–24.) At the end of the investigation, the investigating officer referred the incident report to the Unit Discipline Committee ("UDC") for an initial hearing.

Three days later, on January 28, 2019, the UDC held an initial hearing where Petitioner stated:

> Nothing there belongs to me. That could've been there a long time. They searched my locker, and those Pepsi's [sic] and didn't find anything. They destroyed those Pepsi's [sic]. My boy Mike left the lock[,] and I forgot the combination. It's a 12-man room, why they put it on me.

(*Id*. at ¶ 17.) After the hearing, the UDC referred the incident report to a Discipline Hearing Officer ("DHO"), due to the seriousness of the offense. Officials advised Petitioner of his rights before the DHO, and he acknowledged receipt of those rights. (*Id*. at ¶ 23–24.) Petitioner indicated that he did not wish to have a staff representative or to call any witnesses. (ECF No. 9-1, at 22, 24.)

The DHO held a hearing on February 6, 2019. (*Id*. at 24.) At the hearing, Petitioner repeated that another inmate had given him the combination lock that was inside Petitioner's locker. (*Id*.) In total, the DHO considered: (1) the investigating officer's eyewitness account that he found a combination lock in Petitioner's locker; (2) documentary evidence such as the supporting memorandums, chain of custody logs, and photo sheets; (3) Petitioner's two admissions that another inmate gave him the combination lock; and (4) Petitioner's failure to deny possession of the combination lock at the hearing. (*Id*.)

Ultimately, the DHO found that Petitioner was not guilty of lying to staff or of possessing the cellphones and electronic contraband, because the wall safe was in an area that had common access. (*Id*. at 25.) Instead, the DHO found Petitioner guilty of possessing an unauthorized item in violation of Code 305.[2] (*Id*.) The DHO stated in relevant part:

> Inmate DEL TORO was woken up. . . [and] stated he did not have a lock for his locker. [Staff] searched DEL TORO's locker and found a combination master lock inside DEL TORO's locker. . . .
>
> The DHO took into consideration the reporting officer's eyewitness account that a combination master lock was discovered within your assigned locker. The DHO also considered the documentary evidence within the supporting memorandums, chain of custody logs and photo sheets. The DHO gave greater weight to the aforementioned evidence. The DHO also took into consideration your statement that the combination lock was given to you by another inmate. You do not dispute the officer's discovery of the lock inside your locker, you only deny possession of the cell phones and related contraband discovered within a wall safe behind your

---

[2] Code 305 prohibits: "Possession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels." 28 C.F.R. § 541.3 (Table 1).

>locker. The DHO determined that the area in which the cell phone contraband was located was a common access area and therefore, did not hold you solely responsible for possessing it. However, the reporting officer documented that a combination lock was discovered within your assigned locker that did not belong to you. As such, you were charged with possessing a combination lock that was not acquired by you through regular channels.
>
>Based upon the greater weight of evidence provided before me, your actions are consistent with a violation of Code 305 - Possessing Unauthorized Item.

(*Id.*)  The DHO then issued the following sanctions: (1) revocation of fourteen days of good conduct time, and (2) the loss of thirty days of e-mail privileges. (*Id.*)  Petitioner received the finalized DHO report on August 23, 2019. (*Id.* at 26.)

Petitioner appealed the DHO's decision to the BOP's Regional and Central Offices, arguing that he did not receive proper notice of the charge against him, *i.e.*, because the DHO found that he violated Code 305, rather than the initial charges of Codes 108 and 313. (ECF No. 9-1, at 9–14.)  Petitioner received a denial at each level of appeal. (*Id.*)

In February of 2020, Petitioner filed the instant Petition, arguing that his DHO hearing violated his due process rights.  Respondent filed an Answer opposing relief, (ECF No. 9), and Petitioner filed a Reply, (ECF No. 10).  In terms of relief, Petitioner seeks, among other things, the restoration of his good conduct time. (ECF No. 1, at 7.)

## II.     STANDARD OF REVIEW & JURISDICTION

Courts hold *pro se* pleadings to less stringent standards than more formal pleadings drafted by lawyers. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Courts must construe *pro se* habeas petitions and any supporting submissions liberally and with a measure of tolerance. *See Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998).

4

If a court does not dismiss the petition at the screening stage, the court "must review the answer, any transcripts and records . . . to determine whether" the matter warrants an evidentiary hearing. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts (made applicable to proceedings under § 2241 by Rule 1(b)). "Whether to order a hearing is within the sound discretion of the trial court," and depends on whether the hearing "would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000); *States v. Friedland*, 879 F. Supp. 420, 434 (D.N.J. 1995) (applying the § 2255 hearing standard to a § 2241 petition), *aff'd*, 83 F.3d 1531 (3d Cir. 1996).

Where a petitioner fails to identify evidence outside the record that would support or "otherwise . . . explain how . . . an evidentiary hearing" would advance his claim, a court is within its discretion to deny an evidentiary hearing. *Campbell*, 209 F.3d at 287. In exercising that discretion, a court must accept the truth of a petitioner's factual allegations unless the record shows that they are clearly frivolous. *Friedland*, 879 F. Supp. at 434; *c.f. United States v. Tolliver*, 800 F.3d 138, 141 (3d Cir. 2015).

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The federal habeas statute requires that the petitioner be in custody "under the conviction or sentence under attack at the time" he files his petition. *Lee v. Stickman*, 357 F.3d 338, 342 (3d Cir. 2004) (quoting *Maleng v. Cook*, 490 U.S. 488, 490–91 (1989)).

This Court has subject matter jurisdiction under § 2241 to consider the Petition because Petitioner challenges the loss of good conduct time on constitutional grounds, and he was incarcerated in New Jersey at the time he filed the Petition. *See Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 242–44 (3d Cir. 2005).

### III. DISCUSSION

Petitioner argues that the BOP violated his due process rights because: (1) he did not receive proper notice of the charge against him; (2) "the greater weight of the evidence [did] not support a finding" that he violated Code 305; and (3) that he received a sanction that was unduly harsh. (ECF No. 1, at 6; ECF No. 5-1.)  In response, Respondent contends that Petitioner received all the necessary due process protections, and that in any event, there is "some evidence" to support the DHO's findings and decision. (ECF No. 9, at 11–16.)  Respondent also argues that Petitioner's sanctions fell within the range of permissible sanctions. (*Id*. at 17.)

Under our jurisprudence, before a prisoner may lose good time credits, officials must afford him the following due process protections: (1) a written notice of the charges at least twenty-four hours prior to a hearing; (2) an opportunity to call witnesses and present evidence in his defense; (3) an opportunity to receive assistance from an inmate representative; (4) a written statement of the evidence relied on and the reasons for the disciplinary action; and (5) an appearance before an impartial decision making body. *See Crosby v. Piazza*, 465 F. App'x 168, 171–72 (3d Cir. 2012) (per curiam) (citing *Wolff v. McDonnell,* 418 U.S. 539, 563–71 (1974)).

Additionally, in order to comport with due process, there must be "some evidence in the record" to support a disciplinary officer's findings and decision to revoke good time credits. *Gonzalez v. Hollingsworth*, No. 15-2993, 2016 WL 1732376, at *2 (D.N.J. May 2, 2016) (quoting *Denny v. Schultz*, 708 F.3d 140, 144 (3d Cir. 2013)).  The "some evidence" standard is one of appellate review and is not the same as the "burden of proof in a prison disciplinary proceeding." *Id*.

Indeed, the "some evidence" standard is "minimal and does not require examination of the entire record, an independent assessment of the credibility of the witnesses, or a weighing of the

evidence." *Lang v. Sauers*, 529 F. App'x 121, 123 (3d Cir. 2013) (citing *Thompson v. Owens*, 889 F.2d 500, 502 (3d Cir. 1989)). Instead, "the relevant inquiry asks whether 'there is any evidence in the record that could support'" the disciplinary official's conclusion. *Id.* (quoting *Superintendent v. Hill*, 472 U.S. 445, 455–56 (1985)).

### A. The Right to Written Notice

With the principles above in mind, Petitioner first argues that he did not receive proper written notice of the charges against him. (ECF No. 1, at 6; ECF No. 5-1.) More specifically, he argues that the BOP violated due process by charging him only with Code 108, possessing a hazardous tool, and Code 313, lying to an officer, but found that he committed a different offense, a violation of Code 305, possessing an unauthorized item.

Courts within the Third Circuit have rejected Petitioner's argument "that procedural due process is violated whenever the DHO finds an inmate guilty of an act that the inmate was not originally charged with." *King v. Ebbert*, No. 15-01937, 2016 WL 7365211, at *15 (M.D. Pa. Nov. 28, 2016) (collecting cases); *see also Guerrero v. Recktenwald*, 542 F. App'x. 161, 164 (3d Cir. 2013); *Lee v. Bradley*, No. 21-1502, 2021 WL 5112271, at *4 (M.D. Pa. Nov. 3, 2021); *Milhouse v. Ebbert*, No. 15-13, 2016 WL 4448637, at *3 n.4 (M.D. Pa. Aug. 24, 2016).

In *Guerrero*, the Third Circuit addressed a case in which a prisoner "was initially charged with only the higher offense of engaging in a group demonstration," and argued that "he did not have proper notice to defend against the lesser charge of insolence." *Guerrero*, 542 F. App'x at 164. The Court rejected that argument, finding that although the notice of disciplinary hearing did not explicitly charge Mr. Guerrero with insolence, it was "of no consequence[,] because pursuant to 28 C.F.R. § 541.8(a)(1), a DHO has the authority to find that an inmate 'committed the prohibited act(s) charged, *and/or a similar prohibited act(s) as described in the incident report*.'"

7

*Id*. (emphasis added) (quoting 28 C.F.R. § 541.8(a)(1)); *see also Lee*, 2021 WL 5112271, at *4; *Thornton v. Thomas*, No. 12-1264, 2013 WL 6858741, at *5 (M.D. Pa. Dec. 30, 2013).

"Importantly, however, in order for a DHO to constitutionally change, or amend, a misconduct charge, . . . without the need to provide additional advance-written notice, the factual nature of the alleged prohibited conduct must remain the same." *Sanders v. Zickefoose*, No. 13-1595, 2015 WL 4729831, at *8 (M.D. Pa. Aug. 10, 2015) (citing *Northern v. Hanks*, 326 F.3d 909, 910–11 (7th Cir. 2003) (holding that the notice and report gave the petitioner all the information that he would need to defend against the amended, or modified disciplinary charge)); *see also King*, 2016 WL 7365211, at *15; *Jennings v. Hollingsworth*, No. 14-6881, 2016 WL 880501, at *7 (D.N.J. Mar. 8, 2016).

In the present case, the Court finds that the factual nature of the alleged prohibited conduct remained the same and that the incident report possessed all the information necessary for Petitioner to defend against all three charges. *Cf. Sanders*, 2015 WL 4729831, at *9. In particular, the Code 108 and Code 305 charges were "sufficiently related such that, when [Petitioner] was provided with a copy of the incident report, he had all the relevant facts presented to him to marshal . . . his defense on either charge." *Id*.

For example, the incident report identified: (1) how and when staff found the lock in Petitioner's locker; (2) that Petitioner stated that he did not have a lock for his locker; and (3) that Petitioner admitted that his "boy Mike left the lock and [Petitioner] forgot the combination." (ECF No. 9-1, at 16.) Although the incident report initially charged Petitioner with a violation of Code 108, possession of a hazardous tool, these details would be sufficient for Petitioner to defend against a Code 305 charge, possessing an unauthorized item.

8

This is true because the factual nature of the charges remained the same, *i.e.*, they both concern the possession of contraband identified in the incident report. Effectively, the only difference between the prohibited conduct under each charge are the types of contraband at issue. Once again, "a DHO has the authority to find that an inmate 'committed the prohibited act(s) charged, *and/or a similar prohibited act(s) as described in the incident report*.'" *Guerrero*, 542 F. App'x at 164 (emphasis added) (quoting 28 C.F.R. § 541.8(a)(1)).

Petitioner does allege that he would have presented different witnesses or evidence if he were defending against a Code 305 charge but does not identify the alleged witnesses or evidence. (ECF No. 10, at 5); *Sanders*, 2015 WL 4729831, at *9 ("Sanders does not mention how his strategy . . . would have changed . . . at a new hearing. Similarly, Sanders does not cite to any new evidence that he would have presented, but did not present, or did not previously request to present, at the initial hearing."); *King*, 2016 WL 7365211, at *16 (citing *Von Kahl v. Brennan*, 855 F. Supp. 1413, 1422 (M.D. Pa. 1994)) (hesitating to order a new hearing without some explanation as to how petitioner "was prejudiced by the DHO's determination that King committed a similar prohibited act to the one initially charged").

Next, Petitioner alleges that he would have argued that "he is specifically authorized to possess . . . [the lock] because the BOP sells it on commissary." (ECF No. 5-1, at 4; ECF No. 10, at 5–7.) Petitioner appears to argue that he can possess anything that the BOP sells at commissary, regardless of how he came to possess it. (ECF No. 10, at 6–7 ("If that is the case, one can even be punished for getting just a pencil or pen from his roommate without receipt.).)

In his briefs, Petitioner does not cite to any cases, regulations, rules, program statements, or memoranda, to support his argument. (ECF Nos. 5-1, 10.) Indeed, at times, the BOP expressly

9

prohibits the giving or selling of commissary items from one inmate to another.[3] On the other hand, Respondent does not directly address the issue, and the Fort Dix inmate handbook states only that: "[a]ny article not issued to you by staff, purchased through the commissary, or authorized for possession will be considered contraband. Excessive property and articles used for unauthorized purposes is also considered contraband."[4] Since that sentence does not specify *who* must purchase the item at commissary, it is unclear from the handbook if inmates may receive items purchased by other inmates at commissary.

In any event, it is the regulation, 28 C.F.R. § 541.8 (listing prohibited acts), and the BOP's interpretation of that regulation, that controls, not the inmate handbook. *Materon v. Ebbert*, 446 F. App'x 405, 407 (3d Cir. 2011) (citing *Chong v. Dist. Dir., INS*, 264 F.3d 378, 389 (3d Cir. 2001)). "An agency's interpretation of its own regulation is 'controlling . . . unless it is plainly erroneous or inconsistent with the regulation.'" *Chong*, 264 F.3d at 389 (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)); *Angel v. Dep't of Just.*, No. 15-7514, 2016 WL 3545097, at *4 (D.N.J. June 28, 2016). The provision at issue, Code 305, prohibits the "[p]ossession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels." 28 C.F.R. § 541.3 (Table 1).

Here, the DHO interpreted Code 305 to prohibit the possession of a combination lock obtained through another inmate. It is not plainly erroneous or inconsistent with the regulation to

---

[3] For example, the inmate handbook for the United States Medical Center for Federal Prisoners, in Springfield, Missouri, states that "INMATES ARE NOT ALLOWED TO GIVE OR SELL ANY COMMISSARY ITEMS TO ANOTHER INMATE." Available at: https://www.bop.gov/locations/institutions/spg/SPG_aohandbook.pdf (last visited February 22, 2022).

[4] Available at: https://www.bop.gov/locations/institutions/ftd/FTD_aohandbook.pdf (last visited February 22, 2022).

forbid possession of a commissary item that was not obtained through "regular channels," *i.e.*, personally purchasing it through commissary or receiving it from staff. 28 C.F.R. § 541.3 (Table 1).

Similarly, "[i]t is not a stretch of the imagination," to conclude that prisoners are "not authorized" to retain combination locks from other inmates generally. 28 C.F.R. § 541.3 (Table 1, Code 305); *cf. Angel*, 2016 WL 3545097, at *4. Consequently, the DHO's "interpretation is consistent with the language of Code [305]," and this Court finds no error in the DHO's analysis. *Cf. Materon*, 446 F. App'x at 407.

For all those reasons, the Court finds that the BOP provided Petitioner with sufficient notice of the charge against him to satisfy due process. Accordingly, Petitioner is not entitled to habeas relief on this claim.

**B. Sufficiency of the Evidence**

Next, Petitioner contends "that the greater weight of the evidence does not support a finding . . . that he possessed an unauthorized item." (ECF No. 5-1, at 4–5.) Petitioner offers little explanation for this position, stating only that "[i]f the court closely analyzes this case it will clearly see that no investigation officer or UDC has considered a code 305 violation . . . in the first place which has been completely ignored from this incident report." (*Id*. at 5.)

At the outset, Petitioner is incorrect regarding the incident report, as the investigating officer stated, "I searched DEL TORO's locker and found a combination master lock inside DEL TORO's locker." (ECF No. 9-1, at 16.) Further, the report contains Petitioner's response, to which he admitted that the lock was in his locker and that another inmate had given it to him. (*Id*.) As result, the report contained all of the facts necessary for a potential Code 305 violation, and it was not "completely ignored from the incident report." (ECF No. 5-1, at 4–5.)

11

To the extent that Petitioner asks this Court to reweigh the evidence, that is not the duty of this Court. Unlike a DHO hearing, this Court need not decide whether the "greater weight of the evidence" supports any particular conclusion. Instead, when reviewing a DHO's decision resulting in the loss of good time credits, federal courts will uphold that decision as long as there was "some evidence" to support the DHO's findings and decision. *Hill*, 472 U.S. at 455–56. As mentioned above, the "some evidence" standard is one of appellate review and it is not the same as the "burden of proof in a prison disciplinary proceeding." *Gonzalez*, 2016 WL 1732376, at *2 (quoting *Denny*, 708 F.3d at 144). The standard is "minimal and does not require examination of the entire record, an independent assessment of the credibility of the witnesses, or a weighing of the evidence." *Lang*, 529 F. App'x at 123 (citing *Thompson*, 889 F.2d at 502). Instead, district courts need only ask whether "there is any evidence in the record that could support" the disciplinary official's conclusion. *Id.* (quoting *Hill*, 472 U.S. at 455–56) (internal quotation marks omitted).

With that minimal standard in mind, there is plainly "some evidence" to support the DHO's findings and decision in this case. The investigating officer found the lock in Petitioner's locker, and Petitioner twice admitted that he possessed the lock and that another inmate had given him the lock. (ECF No. 9-1, at 16, 24.) This evidence alone is sufficient to meet the "some evidence" standard. For example, this evidence could have led the DHO to conclude that Petitioner was in possession of an item that he was "not authorized" to possess, or did not obtain through "regular channels," or both. 28 C.F.R. § 541.3 (Table 1). Ultimately, Petitioner merely disagrees with the DHO's interpretation of Code 305, but this Court must accept the DHO's interpretation because it is not "plainly erroneous or inconsistent with the regulation." *Chong*, 264 F.3d at 389 (internal quotation marks omitted). Accordingly, Petitioner is not entitled to habeas relief on this ground.

**C. Severity of the Sanctions**

Finally, Petitioner contends that the loss of fourteen days of good conduct time was "too severe" of a sanction for a Code 305 violation. (ECF No. 5, at 5; ECF No. 10, at 7–9.) Petitioner emphasizes that he had no prior disciplinary history, and that the DHO could have issued other types of sanctions. (ECF No. 5, at 5.) He also refers to other cases around the country where prisoners received less severe sanctions for a Code 305 violation. (ECF No. 10, at 8–9.) It is not the duty of this Court, however, to determine whether the DHO issued the most appropriate sanction under the circumstances. Rather, this Court need only determine whether the sanction violated the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

To the extent Petitioner argues that his sanction violated due process, sanctions do not violate due process when they "fall within the sanctions in the applicable regulation." *Dorsey v. Ortiz*, No. 20-3535, 2021 WL 1171894, at *8 (D.N.J. Mar. 29, 2021) (citing *Wallace v. Ebbert*, 505 F. App'x 124, 125 (3d Cir. 2012)); *Bacon v. Ortiz*, No. 19-11023, 2021 WL 1138137, at *8 (D.N.J. Mar. 25, 2021). Here, Petitioner's loss of fourteen days of good conduct time is within the permissible range of sanctions for a violation of Code 305. *See* 28 C.F.R. § 541.3 (Table 1) (permitting a DHO to "[d]isallow ordinarily up to 25% (1-14 days) of good conduct time credit available for [a] year," for a moderate severity prohibited act like Code 305). Accordingly, the severity of the sanction did not violate due process, and Petitioner is not entitled to habeas relief on this ground.

**IV.   CONCLUSION**

For the foregoing reasons, the Court will deny the Petition. An appropriate Order follows.

DATED: March 15, 2022

/s/ Christine P. O'Hearn
**Christine P. O'Hearn**
**United States District Judge**